IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID VIGIL,

              Petitioner,

v.

MIKE McDONALD, Warden,

              Respondent.

NO. C09-4994 TEH

<u>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING APPOINTMENT OF COUNSEL; GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS</u>

      Petitioner David Vigil ("Petitioner") is currently incarcerated by the California Department of Corrections and Rehabilitation at High Desert State Prison in Susanville, California. He filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, before this Court on October 20, 2009. After conducting an initial review of the petition, the Court ordered Respondent Mike McDonald ("Respondent") to show cause as to why the writ should not be granted. Respondent filed an answer on June 1, 2010, and Petitioner filed a traverse on June 8, 2010. Petitioner requests that the case be set for an evidentiary hearing or, in the alternative, for oral argument; he also renews his motions for appointment of counsel and his applications for leave to proceed in forma pauperis, which this Court denied on December 2, 2009.[1] After carefully reviewing the parties' written arguments, the record, and the governing law, the Court now DENIES the petition for the reasons set forth below. The Court also DENIES the renewed request for appointment of counsel and GRANTS leave to proceed in forma pauperis.

---

[1] The motions for appointment of counsel were denied without prejudice; the applications for leave to proceed in forma pauperis were denied as moot, as Petitioner had already paid the filing fee.

**BACKGROUND**

On April 5, 2006, Petitioner was charged with making criminal threats (Cal. Pen. Code § 422) and resisting arrest (Cal. Pen. Code § 148(a)(1)) in a felony complaint filed in Santa Clara County Superior Court. Two prior convictions for serious felonies were also alleged, based on convictions for robbery (Cal. Pen. Code § 211) and assault with a deadly weapon (Cal. Pen. Code § 245(a)(1)). On October 12, 2006, Petitioner entered a plea of no contest to both charges and admitted the two prior convictions, in exchange for which the State agreed not to seek sentencing enhancements for additional prior convictions or the use of a knife.

The two prior convictions subjected Petitioner to California's Three Strikes Law, which governs sentencing when a defendant is convicted of a felony and has one or more prior felony convictions that are "violent" or "serious" in nature. Cal. Pen. Code § 667(b), (d); *see also id.* § 1170.12.[2] Prior to sentencing, Petitioner moved to dismiss one of his two strike priors pursuant to *People v. Superior Court (Romero)*, 13 Cal. 4th 497, 504 (1996), in which the California Supreme Court held that a sentencing court may "strike prior felony conviction allegations in cases arising under" the Three Strikes Law.[3] The trial court denied the motion on June 11, 2007, sentencing Petitioner to 25 years to life in state prison. *See* Cal. Pen. Code § 667(e)(2)(A).

In sentencing Petitioner, the trial court relied on the summary of Petitioner's offense that appeared in his probation officer's report. Early in the evening of March 30, 2006,

---

[2] The Three Strikes Law was passed in 1994 by the state Legislature, and codified as subdivisions (b) through (i) of section 667 of the California Penal Code. Another version of the law, which was approved later that year by the state's voters through the initiative process, appears at section 1170.12. *See People v. Superior Court (Romero)*, 13 Cal. 4th 497, 504-06 (1996) (explaining history of Three Strikes Law's passage). The two statutes differ only "in minor respects." *Id.*

[3] The sentencing court's authority to strike a prior conviction is derived from section 1385(a) of the California Penal Code, which allows a judge, "in the furtherance of justice," to "order an action to be dismissed." The California Supreme Court has construed this provision "as permitting a judge to dismiss not only an entire case, but also a part thereof, including the allegation that a defendant has previously been convicted of a felony." *Romero*, 13 Cal. 4th at 508 (citing *People v. Thomas*, 4 Cal. 4th 206, 209-10 (1992)).

Petitioner confronted his girlfriend, Jennifer Scaggs, and her two children at a convenience store, where he accused her of cheating on him with another man. Petitioner had been dating Scaggs for about two years, and – although she had obtained a restraining order against him – had been living with her since September 2005. According to the probation report, "he pulled out a steak knife, and while holding it again her stomach, stated, 'I'll kill you, you f----g bitch." State Court Clerk's Transcript ("CT") at 38. Scaggs was able to return to her car and drive her children home, where she locked the door and began calling 911. Petitioner then arrived and entered the house by breaking a living room window with his fist; he took the phone from Scaggs when she told him she was calling the police. She retreated into a bedroom with her children, found another phone, and stepped outside the house to redial 911.

Officers had already arrived by then in response to a neighbor's call. After speaking to Scaggs, the officers saw Petitioner step onto the balcony of the second-floor apartment; they asked him to come down and talk, but he instead returned inside and locked the door. The officers, having been told that children were in the apartment, kicked in the door and found Petitioner crawling out through the bathroom window. They grabbed his legs and attempted to pull him inside, but he resisted. They were ultimately able to get him into the bathroom and subdue him.

The probation report also conveyed a statement from Petitioner, based on an interview in jail. Petitioner denied ever brandishing or even possessing a knife when he confronted Scaggs outside the convenience store. He also characterized the breaking of the window as an accident: he had been standing on an empty five-gallon paint container to turn off an outside light, but lost his balance and fell against the front window, breaking it.

Petitioner's first strike was for a robbery (Cal. Pen. Code § 211). Petitioner was one of two assailants who grabbed a 14-year-old boy from behind, threw him to the ground, and hit and kicked him before taking his portable radio and fleeing in a car.[4] On January 28,

---

[4] According to the statement of mitigation filed on Petitioner's behalf for the *Romero* hearing, two friends had taken the radio while Petitioner was merely a passenger in the same car. CT 15.

3

1  1983, he was sentenced six months in county jail, placed on three years' probation, and
2  ordered to complete 200 hours of community service. He was sentenced to a one-year jail
3  term on June 29, 1984, for violating probation. His second strike was for stabbing a man in
4  the side during a fight that erupted at a family party in the summer of 1988. Petitioner was
5  convicted of assault with a deadly weapon, Cal. Pen. Code § 245(a)(1), with an enhancement
6  based on the use of a knife, *id.* § 12022(b). He was committed to state prison for a four-year
7  term.

8        The trial court held a *Romero* hearing on June 11, 2007, to determine whether to strike
9  any of Petitioner's prior felonies and thereby sentence him "to something less than 25 years
10 to life." State Court Reporter's Transcript ("RT") at 23. Petitioner's trial counsel, John
11 Vaughn ("trial counsel"), stressed that Petitioner had committed the latest of the two prior
12 felonies nearly two decades earlier, at the age of 25; at the time of the first felony, he was 19.
13 His conduct since that time, "while serious[,] has not been as serious as the conduct alleged
14 in his youth." *Id.* at 25. Trial counsel acknowledged a factual dispute but declined to raise it:
15 "As a practical matter, there is a dispute as to what th[e] facts [underlying the offense]
16 actually are, but without quibbling there was an admission of guilt that brings us here today."
17 *Id.* at 24. The sentence proposed by the State was, he argued, "for the worst of the worst," a
18 category that did not include Petitioner. *Id.* at 26. The State asserted in response that
19 Petitioner's "background is horrendous and violent," and that he "is the worst of the worst
20 barring murderers and sex offenders." *Id.* at 28.

21       The trial court, in ruling on the *Romero* motion, stated that the Three Strikes Law sets
22 a "presumptive sentence" of 25 years to life, and that Petitioner had the burden of showing
23 "reasons to depart" from that sentence. *Id.* at 33. Petitioner failed to meet that burden:

> I've gone through the probation report and sadly have come to
> the conclusion that in this case I do not find any facts or
> circumstances that would warrant me exercising my discretion
> that would bear any semblance to a reasonable exercise of
> discretion, and for those reasons I'm going to deny the motion.

27 RT 34. The episode "had to be a nightmare to the victim," the trial court observed,
28 characterizing it as follows:

4

> It occurred out in public where a knife was held against her stomach, and there [were] threats made to her to kill her. She went home alone or with the children rather and then the breaking and entering starts, and the defendant had to be forcibly removed from the roof to get him back in the house.
> I would have probably given some credence and lessen the severity of this particular offense but in the probation report the defendant denied using a knife and indicated that he broke the glass accidentally. That did not measure with me well in terms of acceptance of responsibility and struck me as being somewhat not asking for the kind of help that the court could give.

*Id.* at 34. Although the court agreed with trial counsel that the "present offense" was "an in-between type of case," the court declared that "it would be an abuse of my discretion just based solely on the offense in this particular case itself to grant" the *Romero* motion. *Id.* at 35. Among the factors weighed by the trial court were the 39 misdemeanors and four felonies on Petitioner's record; his repeated domestic violence cases and violations of parole; his "intolerance of authority," which "makes . . . his prospects dim"; and his failure to take advantage of previous opportunities to "try to straighten out his life." *Id.* at 35-36. The trial court therefore concluded that it was "duty bound" to deny the motion and impose the "very heavy sanction" of a sentence of 25 years to life. *Id.* at 37.

The California Court of Appeal affirmed the judgment in an unpublished opinion. Petitioner filed a petition for writ of habeas corpus in state court, which the Santa Clara County Superior Court denied on October 22, 2008. The California Court of Appeal summarily denied Petitioner habeas relief on November 26, 2008, and the California Supreme Court denied review on January 28, 2009. Petitioner filed the instant federal petition on October 20, 2009.

**STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established Supreme Court law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving materially indistinguishable facts but reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of Supreme Court law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

  Holdings of the Supreme Court at the time of the state court decision are the only definitive source of clearly established federal law under AEDPA. *Williams*, 529 U.S. at 412. "While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) (citation omitted).

  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted). Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1).

  When applying these standards, the federal court should review the "last reasoned decision" by the state courts. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Because the California Court of Appeal and the California Supreme Court summarily denied relief, this Court looks to the written decision of the state superior court denying Petitioner's request for habeas relief.

6

**DISCUSSION**

Petitioner claims that he was denied the effective assistance of counsel at sentencing in violation of the Sixth and Fourteenth Amendments, because trial counsel failed to introduce evidence that Scaggs was unsure whether Petitioner held a knife when he accosted her outside the convenience store. He seeks a new sentencing hearing.

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. A defendant is deprived of that guarantee where "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A petitioner raising an ineffective assistance claim must show the deficiency of counsel's performance and prejudice to the defense. Performance is deficient where it falls "below an objective standard of reasonableness," with reasonableness assessed according to "prevailing professional norms." *Id.* at 688. Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," while "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Prejudice occurs where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A reviewing court may "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" without determining "whether counsel's performance was deficient." *Id.* at 697.

In an interview with an investigator for the Santa Clara County Public Defender, Scaggs explained that she did not see the sharp object that Petitioner held against her. The investigator recounted the interview as follows in a report dated May 5, 2006:

> She felt a sharp object on her side. She did not see what it was. She's guessing it could have been one of her steak knives or it could have been a pen. She does not know. She did not see the sharp object. It did not cut her, nor did it go through her clothing.

7

Exh. A to Exh. 4.  This statement, Petitioner argues, should have been presented at the *Romero* hearing.  Trial counsel's failure to do so prevented Petitioner from obtaining a more lenient sentence, he claims, as the trial court – in its own words – "would have probably given some credence and lessen the severity of this particular offense but in the probation report the defendant denied using a knife and indicated that he broke the glass accidentally."  RT at 34.  Since Scaggs' statement suggests that Petitioner was truthful in denying the use of a knife, such evidence would "probably" have prompted the trial court to grant the *Romero* motion, Petitioner claims.

The state court denied habeas relief on this claim based on Petitioner's failure to "show a reasonable probability that the outcome of the *Romero* motion would have been different if Ms. Scagg[s'] statement had been introduced."  Exh. 12 (Order Denying Petition for Writ of Habeas Corpus) at 2.  "[W]hether petitioner used a knife or other 'sharp object' in the commission of the crime is irrelevant," the court found, as "the nature of the threat and the fear instilled in the victim is the same."  *Id.* at 4.  In light of the other evidence considered on sentencing – Petitioner's "long and continuous criminal record," his repeated parole violations, his poor performance on probation, and his "intolerance of authority" – it was not "reasonably probable" that the omitted evidence would have prompted the trial court to deem Petitioner "outside the scope of the Three Strikes scheme."  *Id.*

Petitioner argues that relief is warranted because the state court's decision "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  However, the *Strickland* standard was articulated in the context of *capital* sentencing.  The Court expressly declined to "consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance."  *Strickland*, 466 U.S. at 686.  Since *Strickland*, "the Supreme Court has not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases."  *Davis v. Grigas*, 443 F.3d 1155, 1158 (2006).  The Ninth Circuit has therefore concluded that "there is no

8

1  clearly established federal law as determined by the Supreme Court in this context," making
2  habeas relief based on an unreasonable application of "clearly established Supreme Court
3  precedent" unavailable for claims of ineffective assistance in a noncapital sentencing. *Id.*;
4  *see also Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005).

   Even if the *Strickland* standard were "clearly established Federal law" for non-capital
6  sentencing, the state court's conclusion that there was no prejudice is not an unreasonable
7  application of that standard. In ruling on the *Romero* motion, the trial court applied the
8  standard articulated by the California Supreme Court in *People v. Williams*, which requires
9  the court to

> consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.

14 *People v. Williams*, 17 Cal. 4th 148, 161 (1998). The suggestion that the trial court would
15 have granted the *Romero* motion if it had only heard the undisclosed evidence is contradicted
16 by the record. The trial court stated that it found *no* "facts or circumstances that would
17 warrant me exercising my discretion." RT at 34. Although the trial court mentioned the
18 knife in characterizing Petitioner's most recent felony as a "nightmare to the victim," the
19 court also based that conclusion on the "threats . . . to kill her," the "breaking and entering,"
20 and the need for police to "forcibly remove[]" Petitioner from the roof. *Id.* In stating that it
21 "would have probably . . . lessen[ed] the severity of this particular offense," the trial court
22 declared that *both* Petitioner's denial of using a knife *and* his claim to have accidentally
23 broken the window glass "did not measure with me well in terms of acceptance of
24 responsibility." *Id.* Evidence suggesting Petitioner was truthful about the knife would not
25 have altered how the trial court regarded his account of breaking the glass. Finally, the trial
26 court explicitly stated that it would be an abuse of discretion to grant *Romero* relief "based
27 solely on the offense in this particular case." *Id.* at 35. Since Petitioner's claim relies

9

exclusively on evidence related to "this particular case," it is not reasonably probable that such evidence would have produced a different result.

The state court denied relief only after concluding that the undisclosed evidence could not counter the extensive record that supported sentencing Petitioner pursuant to the Three Strikes Law. As this was not an unreasonable application of clearly established Supreme Court precedent, the habeas relief requested by Petitioner is DENIED.

Petitioner also renews his motions for appointment of counsel and his applications for leave to proceed in forma pauperis. The Court had previously denied without prejudice the motions for appointment of counsel, providing that the Court would "appoint counsel on its own motion if an evidentiary hearing is later required." Order to Show Cause (Doc. 6) at 3. As relief is being denied without an evidentiary hearing, the renewed request for appointment of counsel is DENIED. The Court also denied as moot the applications for leave to proceed in forma pauperis, as the $5.00 filing fee had already been paid. Petitioner represents that he does not have the funds to pay the filing fee for an appeal. For good cause appearing, the application to proceed in forma pauperis is therefore GRANTED.

**CONCLUSION**

For the above reasons, Petitioner has failed to show that he is entitled to habeas relief in this case. Accordingly, with good cause appearing, the petition for a writ of habeas corpus is DENIED, and the renewed request for appointment of counsel is DENIED. Leave to proceed in forma pauperis is GRANTED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: 8/3/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

10